UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK KNOX | CIVIL ACTION |
| VERSUS | NO. 16-13350 |
| BISSO MARINE, LLC, ET AL. | SECTION A(5) |

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 36)** filed by REC Marine Logistics, LLC; **Motion for Summary Judgment (Rec. Doc. 46)** filed by Bisso Marine, LLC; **Motion for Summary Judgment (Rec. Doc. 52)** filed by Dawn Services, LLC. All motions are opposed. The motions, submitted to the Court on April 19, 2017, and May 3, 2017, are before the Court on the briefs without oral argument.

**I.    BACKGROUND**

This action arises out of injuries that Plaintiff Patrick Knox sustained during a personnel basket transfer in July 2014 while working in the Gulf of Mexico. Knox, who was employed by Coastal Towing, LLC, was working as a crewmember on the TRENT JOSEPH when he became ill and needed to be evacuated to shore for treatment. To effect the evacuation, Knox first transferred from the TRENT JOSEPH to the MIGHTY CHIEF, Bisso Marine's vessel, and then from the MIGHTY CHIEF to the MS JANE, REC Marine Logistic's vessel. A crane was used to transfer Knox via personnel basket from the MIGHTY CHIEF to the MS JANE. According to Knox, during the transfer the crane operator slammed the personnel basket onto the deck of the MS JANE causing Knox to be ejected. Knox claims serious injuries to his neck, back, hip, knee and other parts of his body as a result of the incident. (Rec. Doc. 20, Complaint at 3).

The parties were working in the Gulf that day because Bisso undertook an offshore construction project to lay pipe offshore. Bisso was using its pipelay barge MIGHTY CHIEF for that purpose. For support services, Bisso hired a towing vessel and an offshore supply vessel. Bisso contracted with Dawn Services, LLC for the towing vessel (TRENT JOSEPH), which Dawn obtained from Coastal via an oral agreement. Bisso had no direct contract with Coastal. Bisso contracted with Kilgore Marine Service, Inc. (2010 master time charter agreement) for the supply vessel (MS JANE), which Kilgore obtained via a written contact from REC (2014 brokerage agreement). Bisso had no direct contract with REC. The following chart, taken from Bisso's Memorandum in Support (Rec. Doc. 46-1 at 3),[1] depicts the relationship between the entities:



The instant litigation was initiated by Coastal, Knox's employer and owner/operator of the TRENT JOSEPH, who sought a declaratory judgment that REC was responsible for the incident and must indemnify Coastal for all sums paid to Knox. REC filed a third-party demand against Dawn seeking defense and indemnity under Dawn's contract with Bisso. Knox was granted leave to intervene to assert claims against Bisso, REC, and Coastal.

The instant motions pertain to certain of the cross claims/third-party demands between Bisso, REC, and Dawn. A bench trial is scheduled for January 22, 2018 (Rec. Doc. 58). The

---

[1] REC also provided a helpful diagram in its Memorandum in Support (Rec. Doc. 36-1 at 3).

magistrate judge is continuing to help settle Knox's injury claim and a full proposal is due to the magistrate judge on May 15, 2017. (Rec. Doc. 50).

## II. DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### *REC's Motion for Summary Judgment*

REC moves for summary judgment on its third-party demand against Dawn. REC contends that the Master Subcontractor Agreement ("MSA") between Bisso and Dawn inures to its benefit such that Dawn owes contractual defense and indemnity to REC. REC's claim is grounded on Section 4(d)(1) of the MSA. The Court need not recite the lengthy section in full

because it suffices to say that it will only inure to REC's benefit if REC is part of the "Contractor Group," as defined in the MSA.[2] (Rec. Doc. 36-3, Exhibit B at 3). According to the MSA, the term "Contractor Group" is meant to include individually and collectively

> [Bisso] and its subsidiary, affiliated companies, co-venturers, partners, joint venturers, owners, stockholders, representatives, and Customer (and anyone to whom Customer contractually requires indemnity or insurance) as well as the officers, directors, employees, agents, assigns, *invitees*, and insurers of all of the foregoing . . . .

Rec. Doc. 36-3 at 4 (emphasis added by the Court).

REC argues that it qualifies as Bisso's "invitee" and therefore should be considered part of the Contractor Group of the Bisso-Dawn MSA.

The Court is unpersuaded that REC has established as a matter of law that it was Bisso's invitee under the circumstances of this case and in light of the definition of Contractor Group found in the specific MSA at issue in this case. Beginning with the plain text of the MSA, "invitee" is one of several enumerated parties that constitute the Contractor Group but subcontractors are not included in the list. It is not surprising that subcontractors did not make the list because all of the enumerated parties that do constitute the Contractor Group are similar in that they are closely related to Bisso if not actually part of Bisso's corporate structure. Meanwhile, REC was not even a direct contractual partner with Bisso because REC's contract was with Kilgore. Any suggestion that Kilgore signed its contract with Bisso as agent for REC (Rec. Doc. 36-1, Diagram in Memo at 3), is belied by chronology because the Kilgore-REC agreement post dates the Bisso-Kilgore agreement by almost four years. Thus, while the Court agrees with REC's suggestion that contractor status does not ipso facto deprive one of invitee status, treating REC as an invitee in

---

[2] For completeness, the Court notes that in addition to REC falling within the Contractor Group, Coastal must fall within the Subcontractor Group. The Court assumes for purposes of this motion that the oral agreement between Dawn and Coastal establishes that Coastal is a subcontractor of Dawn and therefore within the Subcontractor Group.

the context of the Contractor Group that the MSA expressly defines would seem rather anomalous.[3] REC's interpretation would mean that Dawn agreed to indemnify not only the Bisso corporate family but also all of the numerous subcontractors that performed work for Bisso. This gargantuan undertaking is not what the contract suggests.

REC's attempt to insinuate itself into the Contractor Group is no more persuasive when moving away from the plain text of the MSA .The MSA does not define "invitee" but in *Brown v. Sea Mar Management, LLC*, the Fifth Circuit applied the Louisiana definition of invitee to a maritime contract: "A person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage." 288 Fed. Appx. 922, 924 (5th Cir. 2008) (unpublished) (quoting *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894 (5th Cir. 1985)). In order for REC to prevail under this definition, the Court would have to conclude that the Gulf of Mexico (or at least some part of it) was a "premises" that Bisso "occupied" before it invited REC to join the party. Trying to conceptualize REC as an invitee under the definition above strikes the Court as awkward. And the Court is not persuaded that being in the Gulf simply to perform work on behalf of Bisso, in and of itself, was sufficient to trigger invitee status under the MSA. The term entails more than that.

REC's legal arguments are grounded on a plethora of district court cases, none of which constitute controlling authority for this Court, most of which can be distinguished, and none of which suggest to the Court that Dawn owes indemnity to a collateral subcontractor of the third degree. REC's motion for summary judgment is therefore DENIED.

---

[3] For this reason the Court is not persuaded by *In re Larry Doiron, Inc.*, No. 11-1510, 2013 WL 1768017 (W.D. La. Apr. 24, 2013), which REC discussed at length. The indemnity agreement in that case referenced contractors and subcontractors as well as invitees so the court's statement that "LDI was the invitee of Apache," which did not follow from an analysis of the maritime definition of "invitee," was dicta. In contrast, the Contractor Group in this case does not include contractors and subcontractors which suggests that these individuals were not intended to be indemnified by Dawn.

### *Bisso's Motion for Summary Judgment*

Bisso moves for summary judgment against REC on the cross claims for contribution and contractual indemnity that REC has asserted against Bisso in conjunction with Knox's claim. Bisso argues that REC contractually waived these claims as part of its brokerage agreement with Kilgore.

Bisso's motion is grounded on Section 5 of the Kilgore-REC brokerage agreement. The Court need not recite the lengthy section in full because it is clear that if Section 5 applies, it constitutes a contractual waiver of REC's claims (whether for tort contribution or contractual indemnity) against Bisso under the circumstances of this case.

In fact, REC's opposition is not grounded on any dispute that Section 5 would bar its claims against Bisso if the section applies. Rather, REC contends that Section 2.B of the Kilgore-REC brokerage agreement primes Section 5 because there was a master time charter agreement in place between Bisso and Kilgore. Thus, according to REC, the indemnities in the Bisso-Kilgore master time charter agreement control and the indemnities in Section 5 of the Kilgore-REC brokerage agreement apply only when there is no master time charter in place between the parties.

REC's position is not persuasive. First, contrary to REC's assertion, Section 2.B does not expressly state that the defense and indemnity obligations in a master time charter pre-empt or prime the obligations of Section 5 or that Section 5's language regarding defense and indemnity applies only when Section 2.B does not. The text of the contract simply does not support this contention.

Second, the Court does not agree that Sections 2.B and 5 are in conflict, overlap, or create an ambiguity. The provisions can be read in perfect harmony in exactly the manner that

Bisso suggests in its Reply: In Section 5 REC agreed not to assert claims against Kilgore or any member of the Broker Group, which includes Bisso, *in addition to and not in lieu of* assuming any contractual obligations that Kilgore might be forced to assume in order to charter REC's vessels to third parties. (Rec. Doc. 57, Reply at 3). As Bisso points out, given that the express goal of the Kilgore-REC brokerage agreement was to charter REC's vessels to third parties, interpreting the interplay between Sections 5 and 2.B as REC suggests would render nugatory the very protections that Kilgore had in place for itself, which would be unreasonable. The Court is persuaded that REC contractually waived the very claims that it now asserts against Bisso and that this aspect of Bisso's motion for summary judgment must be GRANTED.

As part of its motion Bisso seeks an order requiring REC to pay all costs and attorney's fees that Bisso has incurred to defend against REC's claims. The Court agrees with Bisso's suggestion (Reply at 5) that it work with REC to resolve the fee issue in light of this ruling.

### *Dawn's Motion for Summary Judgment*

For the reasons given above when the Court denied REC's motion for summary judgment, Dawn's cross motion for summary judgment is GRANTED insofar as Dawn seeks a ruling that it need not provide contractual defense and indemnity to REC in conjunction with Knox's claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 36)** filed by REC Marine Logistics, LLC is **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 46)** filed by Bisso Marine, LLC is **GRANTED** as explained above;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 52)** filed by Dawn Services, LLC. Is **GRANTED**.

May 15, 2017

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE